UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTAL SCOTT,

          Plaintiff,               Case No. 2:21-cv-12774

                                 District Judge Mark A. Goldsmith

v.                              Magistrate Judge Anthony P. Patti

CITY OF DETROIT, *et al*.,

          Defendants.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY WITHOUT PREJUDICE IN PART DEFENDANTS' MOTION TO DISMISS (ECF No. 22)

**I.** **RECOMMENDATION**: The Court should **GRANT IN PART** and **DENY WITHOUT PREJUDICE IN PART** the City Defendants' motion to dismiss. (ECF No. 22.)  Specifically, the Court should determine that the Detroit Police Department (DPD) is not a proper party and dismiss it from the suit, but deny without prejudice the remainder of the City Defendants' motion, *as briefed*, for the reasons that follow.

**II.** **REPORT**

    **A.** **Background**

        **1.** **Current Lawsuit**

Proceeding *in pro per*, Plaintiff filed the instant lawsuit on November 29, 2021, against: (1) City of Detroit; (2) DPD; (3) Bridget Lamar; (4) Gail Oxendine;

(5) former Police Chief James Craig; (6) Letitia Jones; and (7) Valerie Bryant from York Risk Management.[1]  She claims discrimination and retaliation in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, *et seq.*, Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e, *et seq.*, the Michigan Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101, *et seq.*, and the Michigan Persons with Disabilities Civil Rights Act (PWDCRA). (ECF No. 1, PageID.11.)  In so doing, Plaintiff alleges that she was employed as a police officer with the Detroit Police Department when she sustained an injury and was forcibly retired in September 2017 without proper medical care and/or accommodation for her disability.  (ECF No. 1, PageID.3-11.)

---

[1] In my order granting Defendants' counsel's September 7, 2022 *ex parte* motion for withdrawal, I explained:

> From both the [September 19, 2022 status] conference and the *ex parte* motion to withdraw as counsel for Defendant Bryant, filed by City of Detroit Law Department attorney Jason McFarlane (ECF No. 43), the Court has learned that counsel for Defendant City of Detroit mistakenly accepted service (ECF No. 29) and entered appearances on behalf of (ECF Nos. 13 & 14) Defendant Bryant.  Counsel for Defendant City had no authority to do either, as Defendant Bryant was not employed by Defendant City during the time period at issue in this lawsuit, nor is she presently employed by Defendant City.

(ECF No. 46, PageID.357.)  A summons was issued for Defendant Bryant on September 30, 2022 (ECF No. 49), and the United States Marshal Service (USMS) acknowledged receipt of service documents on October 17, 2022 (ECF No. 51). However, the summons was returned unexecuted on January 27, 2023.  (ECF No. 59.)  Further action with regard to Defendant Bryant will be forthcoming.

### 2.    Prior lawsuits

Plaintiff has filed other lawsuits regarding her employment at the Detroit

Police Department and her alleged forced retirement.  As stated in Judge

Goldsmith's February 1, 2021 opinion and order dismissing the second of those

lawsuits:

> On May 31, 2018, Scott filed suit in Wayne County Circuit Court,
> alleging that the City violated Michigan's Persons With Disabilities
> Civil Rights Act ("PWDCRA") by forcing her to retire and by failing
> to provide a reasonable accommodation for her disability.  On
> February 11, 2019, the state court issued an order granting the City's
> motion for summary disposition, which resolved all pending claims
> and closed the case.  That court subsequently denied Scott's motion
> for reconsideration.  In an opinion issued on May 14, 2020, the
> Michigan Court of Appeals affirmed the circuit court's order
> dismissing the action.

*Scott v. City of Detroit*, No. 20-11752, 2021 WL 323756, at *1 (E.D. Mich. Feb. 1,

2021) (internal citations omitted).

And in that subsequent federal action before Judge Goldsmith, filed on June

15, 2020:

> Plaintiff Kristal Scott initially brought [the] action against the City of
> Detroit (the "City"), alleging employment discrimination on the basis
> of her disability.  In lieu of filing an answer to the complaint, the City
> filed a motion to dismiss.  Scott subsequently filed an amended
> complaint, which added an equal protection claim against new parties
> Police Chief James Craig and Mayor Michael Duggan in their
> individual capacities.  In response to the amended complaint,
> Defendants filed a second motion to dismiss.
>
> Scott allege[d] that she was employed as a police officer by the [DPD]
> beginning in 2004.  In 2013, she sustained an injury that affected her

ability to run and walk, resulting in her assignment to a restricted-duty position at the gun desk. In approximately 2014, during the course of the City's bankruptcy proceedings, the City and Duggan allegedly sought to reduce the City's budget by cutting costs within various departments, including the DPD. In furtherance of this effort, Craig allegedly implemented a policy mandating that the DPD forcibly retire officers permanently assigned to restricted-duty positions and hire as many full-duty officers as possible. This policy was allegedly motivated by Craig's desire to replace officers in restricted-duty positions with civilians, who are less expensive to employ. Consequently, Scott allege[d] that the City Board of Trustees approved the DPD's application to place her on duty disability retirement, effective September 7, 2017. Scott appealed this decision, which was affirmed on May 1, 2018.

In Count I of the amended complaint, Scott advance[d] against the City claims of disability discrimination and failure to accommodate under the Rehabilitation Act, 29 U.S.C. § 794, et seq. Count II allege[d] that by implementing discriminatory policies that led to Scott's forced retirement, Craig and Duggan violated the Equal Protection Clause of the Fourteenth Amendment, contending that she was treated adversely as compared to similarly situated employees without disabilities.

*Scott*, 2021 WL 323756, at *1 (internal citations omitted). Ultimately, the Court dismissed both claims under the doctrine of res judicata, finding that the claims were precluded by the prior state-court judgment. *Id*. at 3-8.

### 3. Instant Motion

Judge Goldsmith has referred this case to me for all pretrial matters. (ECF No. 20.) On April 22, 2022, Defendants City of Detroit, DPD, Lamar, Oxendine, Craig, and Jones (collective the City Defendants) filed a motion to dismiss Plaintiff's current claims pursuant to Fed. R. Civ. P. 12(b)(6), arguing that: (1) the

DPD is not a legal entity that can be subject to suit; (2) the claims are barred by the doctrines of res judicata and collateral estoppel; (3) Plaintiff failed to exhaust administrative remedies because she has not established that she timely filed an EEOC charge; and (4) that "Plaintiff has failed to establish that she filed the instant action within 90 days after the receipt of a right-to-sue notification from the [Equal Employment Opportunity Commission] EEOC." (ECF No. 22, PageID.66-83.)

The Court ordered Plaintiff's response to the motion by May 25, 2022 (ECF No. 23), but Plaintiff did not file her initial response until June 22, 2022 (ECF No. 35). Following the August 16, 2022 scheduling/status conference, however, the Court ordered that Plaintiff file, as a supplemental response, a copy of the EEOC charge corresponding to the EEOC right-to-sue letter attached to her initial response. (ECF No. 38.) She did so on September 1, 2022, but also edited the substance of her response (ECF No. 40), which the Court had not specifically authorized.[2]

In Plaintiff's supplemental response, she appears to assert that prior counsel amended her state court complaint to add disability discrimination to her pregnancy discrimination claims, and states that "the state court issued an order dismissing the claims due directly to pregnancy in which [she] was present for."

---

[2] Nevertheless, the City Defendants did not move to strike the supplemental response on that or any other basis, and directed their reply to Plaintiff's supplemental response. (*See* ECF No. 45, PageID.350.)

5

(ECF No. 40, PageID.254.)  Further, she asserts that res judicata should not apply to bar her current claims because she could not have raised these claims before receiving her right-to-sue letter from the EEOC in November 2021.  (ECF No. 40, PageID.254-257.)

The City Defendants filed a reply brief on September 9, 2022, arguing that Plaintiff failed to identify "new" facts or claims not barred by res judicata or collateral estoppel; that the right-to-sue letter does not preclude dismissal; and that Plaintiff's claims are barred by the statute of limitations because: "Plaintiff's EEOC charge shows that she did not timely file her charge.  Her last date of discrimination was March 3, 2018.  Plaintiff had until December 28, 2018 to file her EEOC charge.  It was not filed until March 15, 2019."  (ECF No. 45, PageID.352-355.)

The Court then granted Plaintiff's motion (ECF No. 47) for leave to file a sur-reply (ECF No. 50), and, after twice rejecting her submissions as non-conforming (ECF Nos 52, 54, Text-Only Orders of 10/24/22 & 11/18/22), ultimately accepted her November 29, 2022 sur-reply.  There, Plaintiff argues that she timely filed her EEOC charge.  (ECF No. 56, PageID.392.)  Additionally, she asserts that res judicata does not bar her claims because the prior actions were not decided on all the merits as it would have been impossible for them to be presented

6

at that time, and because privity does not exist between the parties.  (ECF No. 56,

PageID.392-394.)

### B.  Standard

"[A] motion to dismiss under Rule 12(b)(6) is generally not the appropriate

vehicle to dismiss a claim based on an affirmative defense such as res judicata."

*Mixon v. Trott Law, P.C.*, No. 19-1366, 2019 WL 4943761, at *2 (6th Cir. Aug.

28, 2019).  "However, where a complaint 'shows on its face that relief is barred by

an affirmative defense,' dismissal under Rule 12(b)(6) is appropriate."  *Id.* (citing

*Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir.

2010)).  "In evaluating a res judicata defense presented by way of a Rule 12(b)(6)

motion, a court may take judicial notice of its own records and the records of other

courts."  *Scott*, 2021 WL 323756, at *2 (citing *Solis v. Global Acceptance Credit

Co., L.P.*, 601 F. App'x 767, 771 (11th Cir. 2015)).  "'EEOC charges and related

documents, including right to sue letters, are public records of which the Court

may take judicial notice in ruling on a motion to dismiss without having to convert

the motion into one for summary judgment.'"  *Haire v. Farm & Fleet of Rice Lake,

Inc.*, No. 21-cv-10967, 2022 WL 128815, at *6 (E.D. Mich. Jan. 12, 2022)

(quoting *Kovac v. Superior Dairy, Inc.*, 930 F.Supp.2d 857, 862-63 (N.D. Ohio

2013)).

**C.      Discussion**

  **1.      The Court should find that the DPD is not a proper party
          for suit**

First, the Court should dismiss the DPD from this action because, as the City

Defendants assert (ECF No. 22, PageID.66-67), the DPD is an agency of the City

itself and, therefore, not a proper party for suit.  *See Haverstick Enterprises, Inc. v.*

*Fin. Fed. Credit, Inc.*, 32 F.3d 989, 992 n.1 (6th Cir. 1994) ("Under the law of

Michigan, a municipal police department is a creature of the municipality.  A suit

against a city police department in Michigan is one against the city itself, because

the city is the real party in interest.") (citations omitted).

  **2.      The Court should, however, deny without prejudice the
          remainder of the City Defendants' motion to dismiss (ECF
          No. 22), as briefed**

For the reasons that follow, including insufficient briefing, the Undersigned

recommends that the Court deny without prejudice the remainder of the City

Defendants' motion to dismiss.  (ECF No. 22.)

  **a.      Exhaustion**

As an alternative basis for dismissal behind their res judicata and collateral

estoppel arguments, the City Defendants assert that Plaintiff failed to exhaust her

administrative remedies.  (ECF No. 22, PageID.82-83; ECF No. 45, PageID.354-

355.)  Specifically, in reply to Plaintiff's supplemental response, to which Plaintiff

attached her EEOC intake questionnaire and charge, plus related documents (ECF

No. 40, PageID.267-291), the City Defendants assert:

> Plaintiff's EEOC charge shows that she did not timely file her
> charge.  Her last date of discrimination was March 3, 2018.  Plaintiff
> had until December 28, 2018 to file her EEOC charge.  It was not
> filed until March 15, 2019.  Therefore, her EEOC charge was filed
> untimely and her claims should be dismissed.

(ECF No. 45, PageID.355.)

In the opinion of the Undersigned, however, this argument is cursory and

devoid of the information or detail necessary for the Court to make a competent

determination regarding dismissal on this basis.  First, the City Defendants cite

only to statutory provisions for Title VII in support of their exhaustion argument

(ECF No. 22, PageID.83; ECF No. 45, PageID.354-355), although they seemingly

assert entitlement to dismissal of Plaintiff's ADA claims on the same basis (ECF

No. 45, PageID.354-355).  Second, the City Defendants wholly fail to provide the

Court any law associated with the analysis of such an exhaustion argument.

Finally, Plaintiff makes an argument in her sur-reply that the Undersigned believes

requires additional information and analysis.  She states:

> [T]he defense indicated that the EEOC charge was not filed timely.
> However, it was filed timely during December of that year when there
> was a government shutdown which caused the delay of thousands of
> complaints getting answered on time.

(ECF No. 56, PageID.392.)  Indeed, a review of the EEOC documents Plaintiff

attached to her supplemental response reveals what appears to be the EEOC intake

questionnaire associated with her relevant EEOC charge, dated December 8, 2018 (ECF No. 40, PageID.267-270), which is within the acceptable timeframe proposed by the City Defendants (*see* ECF No. 45, PageID.355), and an actual EEOC charge dated March 15, 2019 (ECF No. 40, PageID.284).  And the Undersigned has confirmed and takes judicial notice of the fact that there was a shutdown of the federal government between December 22, 2018, and January 25, 2019.  *See* https://www.politico.com/story/2019/01/25/trump-shutdown-announcement-1125529.

While the City Defendants' argument that Plaintiff failed to exhaust her administrative remedies with regard to her ADA and Title VII claims may ultimately be correct, the Undersigned hesitates to make a clear recommendation regarding dismissal on this basis.  The City Defendants have not had a chance to respond to Plaintiff's assertions, it is unclear whether a government shutdown or any other factor may have contributed to a delay in the filing of Plaintiff's EEOC charge, and neither party has provided law regarding timing discrepancies between the filing of EEOC intake questionnaires and charges, and how those discrepancies may affect exhaustion of claims.

### b.    Res judicata

The City Defendants' most supported argument is that for dismissal of Plaintiff's claims on the basis of res judicata.  But again, the Undersigned believes

he cannot make an appropriate recommendation regarding this basis for dismissal in light of deficiencies in the current briefing.

Aside from broad statements, including a short assertion in their reply brief that Plaintiff's "March 15, 2019 EEOC charge contains the same allegations as her prior 2 lawsuits and is subject to dismissal pursuant to the doctrines of res judicata and collateral estoppel" (ECF No. 45, PageID.353), the City Defendants argue the preclusive effect of the prior state-court judgment, as opposed to Judge Goldsmith's prior federal decision.[3]  The Full Faith and Credit Act, 28 U.S.C. § 1738, "directs federal courts to 'give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'"  *Young v. Twp. of Green Oak*, 471 F.3d 674, 680 (6th Cir. 2006) (citation omitted).  "The doctrine of res judicata bars a successive action in Michigan if '(1) the prior action was decided on the merits, (2) both actions involve the same parties or privies, and (3) the matter in the second case was, or could have been, resolved in the first."  *Id*. (citation omitted).

_____

[3] For example, the City Defendants provide only the standard for reviewing the preclusive effect of a state-court judgment on a subsequent federal action in Michigan (ECF No. 22, PageID.76-81), and specifically state, "Defendant moves this Honorable Court to dismiss this matter with prejudice on the grounds that Plaintiff is precluded from bringing the same claims in federal court that have already been adjudicated in state court." (ECF No. 22, PageID.67.)

### i.      Decision on the merits

There is no meaningful dispute that the state court action was decided on the merits.  Judge Goldsmith ruled in Plaintiff's prior federal action that "the state-court action was decided on the merits, as the state trial court granted the City's motion for summary disposition and closed the case, and thereafter denied Scott's motion for reconsideration."  *Scott*, 2021 WL 323756, at *3.

### ii.     Privity

Plaintiff does challenge whether the City Defendants are in privity with the parties in her prior actions, stating, in her sur-reply:

> Previous actions did not involve the same parties or privity as Letitia Jones works for the law department, as described on the city of Detroit website.  As Established by the Detroit City Charter, the Law Department is an independent agency that represents the interests of the City of Detroit as a corporate body.  Furthermore, Valerie Bryant, as stated by the defense at the status conference, was not currently working as an employee of the city of Detroit, she was more like a third party.  Moreover, former Police Chief James Craig does not currently work for, nor is he associated at this time with, the city of Detroit police department.

(ECF No. 56, PageID.393.)

The City was a party in Plaintiff's state-court action.  (*See* ECF No. 22-3, PageID.151-152.)  As Judge Goldsmith stated in his opinion and order dismissing Plaintiff's prior federal action, a government official is considered to be in privity with the government whether sued in an official or individual capacity.  *Scott*, 2021 WL 323756, at *5 (citing *McCoy v. Michigan*, 369 F. App'x 646, 650 (6th Cir.

12

2010)).  Specifically, the Court stated that the Sixth Circuit has held "that privity is established under the three-part test 'when the previous governmental-unit Defendant . . . and the present-case [individually named defendants] have an employer-employee relationship, regardless of whether the claims in the first suit were brought against the Defendants in the same capacity as the claims in the second.'"  *Scott*, 2021 WL 323756, at *5 (quoting *McCoy*, 369 F. App'x at 650).

Although not a City employee, Defendant Bryant is not a party to the instant motion, nor has service been perfected for her, as described above.  And Plaintiff's arguments regarding Defendants Jones and Craig are unavailing.  She provides no convincing support for her assertions that an employee of the City's law department is not an employee of the City, or that because Craig is not currently employed by the City, despite being an employee during the time period at issue in her claims, he is not in privity with the City.

### iii. Matter in second case could have been resolved in first

With regard to the third element for the application of res judicata—the matter in this case could have been resolved in the prior state court action—it is the opinion of the Undersigned that the City Defendants' arguments are underdeveloped and, therefore, insufficient as briefed to provide a clear recommendation regarding dismissal on the basis of res judicata.  As stated by Judge Goldsmith in his prior opinion and order:

13

Under Michigan law, "[r]es judicata bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 817 (6th Cir. 2010) (internal quotation marks and citation omitted). This "transactional test" provides that "the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give[s] rise to the assertion of relief." *Adair* [*v. Michigan*], 680 N.W.2d [386,] 397 [(Mich. 2004)] (internal quotation marks omitted). That is, a claim arises from the same transaction "regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff ... and regardless of the variations in the evidence needed to support the theories or rights." *Id*. at 398 (internal quotation marks omitted).

*Scott*, 2021 WL 323756, at *3.

In the brief supporting their motion to dismiss, the City Defendants assert:

Here, the allegations as to Plaintiff's claims are part of the same transaction that gave rise to the state-court action and the federal court action. Many of the factual allegations raised with respect to the claims were raised in both prior court actions. Plaintiff should have and could have raised the current allegations in the initial state-court action.

(ECF No. 22, PageID.81.) Even if the Court agrees with the assertion regarding the commonality of factual allegations, however, in the opinion of the Undersigned, the City Defendants have failed to adequately address Plaintiff's argument that she could *not* have filed her ADA or Title VII claims during the pendency of the state-court action because she did not receive her right-to-sue letter from the EEOC until November 2021. (ECF No. 40, PageID.254-257.)

14

A plaintiff wishing to file a private lawsuit seeking relief under Title VII must obtain a right-to-sue letter from the EEOC, and then file suit within ninety days after receiving it. *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1486 (6th Cir. 1989) ("The Title VII plaintiff satisfies the prerequisites to a federal action (1) by filing timely charges of employment discrimination with the EEOC, and (2) receiving and acting upon the EEOC's statutory notice of the right to sue."); *see also* 42 U.S.C. §§ 2000e-5(e)(1) and (f)(1).  These requirements also apply to ADA claims. *See Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 322 (6th Cir. 2012) (Clay, J., concurring) ("The ADA explicitly cross-references and adopts Title VII's enforcement section, including 'powers, remedies, and procedures.'"); *Mayers v. Sedgwick Claims Mgmt. Servs., Inc.*, 101 F. App'x 591, 593 (6th Cir. 2004) ("[A] plaintiff seeking relief under the ADA must file suit within ninety days of receiving a right-to-sue letter from the EEOC."); *see also* 42 U.S.C. § 12117(a) (adopting Title VII's "powers, remedies, and procedures" for ADA claims).

In their reply brief (ECF No. 45, PageID.353-354), the City Defendants cite to *Heyliger v. State Univ. & Community Coll. Sys. of Tenn.*, 126 F.3d 849 (6th Cir. 1997).  There, the Sixth Circuit barred federal claims under Tennessee res judicata law where the plaintiff *could have* requested his right-to-sue letter 180 days after he filed his complaint with the EEOC during the pendency of his prior state-court

action, and amended his complaint accordingly, *but failed to do so*. *Heyliger*, 126

F.3d at 855.  However, the City Defendants fail to address the specific timing of

Plaintiff's state-court action at all, let alone reconcile the fact that here, Plaintiff's

state-court action was resolved in February 2019 (ECF No. 22-3, PageID.151-152),

prior to Plaintiff filing her EEOC charge, and only approximately two months after

she filed her intake questionnaire (ECF No. 40, PageID.267-291).  And, as

proffered above, the City Defendants failed to sufficiently argue the untimeliness

of Plaintiff's EEOC charge.

Further, the City Defendants fail to meaningfully argue, if at all, that even if

Plaintiff's claims are not precluded by her prior state-court action because of the

timing of her EEOC charge and/or right-to-sue letter, the prior federal decision

precludes Plaintiff's current claims.  They make no mention of the elements

necessary for federal res judicata, which are similar to, but not exactly the same as

those under Michigan law.  *See Dover v. United States*, 367 F. App'x 651, 653 (6th

Cir. 2010) (for a prior federal judgment to have a preclusive effect on a subsequent

federal action, the following elements must be present: "(1) a final decision on the

merits by a court of competent jurisdiction; (2) a subsequent action between the

same parties or their 'privies'; (3) an issue in the subsequent action which was

litigated or which should have been litigated in the prior action; and (4) an identity

16

of the causes of action").  And it is not the job of the Court to make the argument

on the City Defendants' behalf.

### c.    Collateral estoppel

The Undersigned likewise finds the briefing insufficient in support of the

City Defendants' collateral estoppel argument.

The City Defendants assert that Plaintiff's claims are also precluded by

collateral estoppel, a doctrine which "provides that when the same parties or their

privies have had a full and fair opportunity to litigate a question of fact that was

essential to and determined by a valid and final judgment, the finding of fact is

conclusive in a subsequent action between the same parties."  (ECF No. 22,

PageID.81.)  With little explanation or support, in briefing that can only be

described as weak at best, the City Defendants assert that "[b]ecause the standards

for a disability claim under the ADA and Rehabilitation Act are the same as those

employed in the state action under the PWDCRA and because the determination of

plaintiff's claims is essential to the state judgment, the preclusion doctrine of

collateral estoppel bars plaintiff's disability discrimination claim in federal court

under the Americans with Disabilities Act."  (ECF No. 22, PageID.82.)  They do

not, however, provide the specific elements necessary for a finding of collateral

estoppel, explain and provide support for the concept of mutuality of estoppel or

for what makes a question of fact "essential" for purposes of collateral estoppel, or

account for and explain why Plaintiff should be collaterally estopped from bringing her Title VII or retaliation claims (*see* ECF No. 1, PageID.11). And, aside from citations in support of their assertion that "the tripartite definition of 'disability' is essentially the same under both the ADA and the PWDCRA law[,]" they cite no caselaw whereby a state court, or more importantly a federal court, applied collateral estoppel in this context. (ECF No. 22, PageID.82.)

Moreover, the City Defendants fail to adequately support their assertion that Plaintiff's receipt of her right-to-sue letter does not preclude dismissal of her claims under the doctrine of collateral estoppel.[4] They only cursorily state; "[A]s indicated above, the March 15, 2019 EEOC charge contains the same allegations as her prior 2 lawsuits and is subject to dismissal pursuant to the doctrines of res judicata and collateral estoppel. They are the same claims made in the 2018 intake questionnaire that Plaintiff filed with the EEOC. The receipt of a right to sue letter for prior claims does not avoid the doctrines of res judicata or collateral estoppel." (ECF No. 45, PageID.353.) Again, it is not the job of this Court to demonstrate entitlement to dismissal of Plaintiff's claims on behalf of the City Defendants, simply because they have filed a motion to dismiss and made conclusory arguments.

---

[4] The cases the City Defendants cite in their reply brief at ECF No. 45, PageID.353-354 all appear to involve claim preclusion (res judicata) as opposed to issue preclusion (collateral estoppel).

From all of the above, the Undersigned cannot make a clear recommendation to the Court regarding the validity of the City Defendants' exhaustion, res judicata, or collateral estoppel arguments, and believes the Court should, therefore, deny without prejudice those portions of the City Defendants' motion to dismiss, as briefed.

### D.      Conclusion

The Court should **GRANT IN PART** and **DENY WITHOUT PREJUDICE IN PART** the City Defendants' motion to dismiss.  (ECF No. 22.) Specifically, the Court should determine that the Detroit Police Department (DPD) is not a proper party and dismiss it from the suit, but deny without prejudice the remainder of the City Defendants' motion, as briefed.  In the event the Court accepts this recommendation, the City Defendants will have 45 days from the date the recommendation is adopted to file an additional motion to dismiss.  Further, all parties agreed at the scheduling/status conference to delay discovery until resolution of this motion (ECF No. 42, PageID.328-329), as reflected in the scheduling order, which states that discovery will close "[s]even months after the Court has fully decided Defendants' motion to dismiss (ECF No. 22)" (ECF No. 38, PageID.247).  That delay in the start of discovery remains in effect.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

20

Objection No. 2," *etc*.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated: February 16, 2023

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE