UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTAL SCOTT,

    Plaintiff,

vs.

DETROIT, CITY OF, et al.,

    Defendants.

_____/

Case No. 21-cv-12774

HON. MARK A. GOLDSMITH

**OPINION & ORDER**
**(1) SUSTAINING IN PART DEFENDANTS' OBJECTIONS (Dkt. 61), (2) ACCEPTING IN PART AND DENYING IN PART THE RECOMMENDATION CONTAINED IN THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (Dkt. 60), AND (3) GRANTING DEFENDANTS' MOTION TO DISMISS (Dkt. 22)**

This matter is presently before the Court on the report and recommendation (R&R) of Magistrate Judge Anthony P. Patti (Dkt. 60). In the R&R, the magistrate judge recommends that the Court (i) grant in part the motion to dismiss filed by Defendants associated with the City of Detroit (Dkt. 22) by dismissing Defendant Detroit Police Department (DPD), and (ii) deny without prejudice the remainder of City Defendants' motion.[1] City Defendants filed objections (Dkt. 61), and Plaintiff Kristal Scott filed a response (Dkt. 63). For the reasons that follow, the Court sustains City Defendants' objections in part, accepts the magistrate judge's recommendation to dismiss DPD, denies the magistrate judge's recommendation to deny the rest

---

[1] City Defendants are the City, DPD, and four City employees: Bridget Lamar, Gail Oxendine, James Craig, and Letitia Jones. Scott also named Defendant Valerie Bryant, who is not employed by the City and did not join in City Defendants' motion. See R&R at 2 n.1. The magistrate judge entered an order requiring Scott to show cause why Bryant should not be dismissed for lack of service (Dkt. 62).

of City Defendants' motion, and grants City Defendants' motion to dismiss.[2]

## I. BACKGROUND

The present suit is one of several that Scott has brought on the same facts. As the magistrate judge explains, Scott alleges that she was employed as a police officer with DPD until she sustained an injury and was forced to retire in September 2017 without proper medical care or accommodation for her disability. See R&R at 2.

On August 7, 2017, Scott filed an action in Wayne County Circuit Court on these allegations, contending that the City and DPD had violated Michigan's Persons With Disabilities Civil Rights Act (PWDCRA), Mich. Comp. L. §§ 37.1101 et seq. Id. at 3. In that action, Scott was represented by counsel. The state court granted the defendants' motion for summary disposition on February 11, 2019. Id. That decision was affirmed by the Michigan Court of Appeals on May 14, 2020. See Scott v. City of Detroit, No. 348516, 2020 WL 2505385, at *7 (Mich. Ct. App. May 14, 2020).

About a month after losing at the trial court level, Scott filed on March 15, 2019 a complaint with the United States Equal Employment Opportunity Commission (EEOC). See R&R at 6; Suppl. Resp. at PageID.258–264. In a questionnaire she completed in response to the EEOC's request, Scott identified March 3, 2018 as the last day on which she believed she had been discriminated against. Suppl. Resp. at PageID.268.[3]

About a month after losing her state appeal, Scott filed in this Court, on June 15, 2020,

---

[2] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to Defendants' motion, the briefing includes Scott's response (Dkt. 35), Scott's supplemental response (Dkt. 40), Defendants' reply (Dkt. 45), and Scott's sur-reply (Dkt. 56).

[3] Scott's EEOC complaint and intake questionnaire were filed as part of Scott's supplemental response to City Defendants' motion to dismiss.

2

another action based on her termination from DPD.  See Scott v. City of Detroit, No. 20-11572, 2021 WL 323756, at *1 (E.D. Mich. Feb. 1, 2021).  Represented by counsel, she named the City, Craig, and Mayor Michael Duggan as defendants.  See id.  Scott alleged that these defendants had violated the Rehabilitation Act, 29 U.S.C. § 794, et seq., and the Equal Protection Clause of the Fourteenth Amendment.  See id.  This Court found that the prior state court decision barred Scott's federal action under Michigan's doctrine of res judicata, which "'bars . . . every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not.'"  Id. at *3–*8 (quoting Buck v. Thomas M. Cooley Law Sch., 597 F.3d 812, 817 (6th Cir. 2010) (punctuation modified)).[4]

Scott then received a right-to-sue letter from the EEOC dated September 1, 2021.  See Resp. to Mot. at PageID.236–238.[5]  Scott submits that she received this letter in "November 2021."  Id. at PageID.254.

On November 29, 2021, Scott, proceeding pro se, filed the present action in this Court.  Again asserting allegations that she was forcibly retired from DPD and denied accommodations for her disability, Scott brings claims for discrimination and retaliation in violation of (i) the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, et seq.; (ii) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.; (iii) the Michigan Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws §§ 37.2101, et seq.; and (iv) the PWDCRA.  See R&R at 1–2 (citing Compl. at PageID.3–11 (Dkt. 1)).

---

[4] In that opinion, this Court incorrectly stated that Scott had filed her state-law action on May 31, 2018, see Scott, 2021 WL 323756, at *1, which the magistrate judge repeated in the R&R, see R&R at 3.  The docket for Scott's state court action reflects that she filed that lawsuit on August 7, 2017, and then filed amended complaints on November 3, 2017 and May 31, 2018.

[5] The right-to-sue letter is included in the same filing as Scott's response to City Defendants' motion to dismiss.

3

City Defendants move to dismiss on multiple grounds, including res judicata. See R&R at 5 (citing Mot.). Courts applying this doctrine "'give a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" Scott, 2021 WL 323756, at *2 (quoting Young v. Twp. of Green Oak, 471 F.3d 674, 680 (6th Cir. 2006) (punctuation modified)). Under Michigan law, res judicata bars a successive action following a prior action if "'(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.'" Id. (quoting Young, 471 F.3d at 680 (punctuation modified)). City Defendants identified the state court decision as the prior action. R&R at 11 (citing Mot.).

As to the first two elements of a res judicata challenge, the magistrate judge was satisfied that the state court decision was decided on the merits and that the City Defendants are in privity with the parties in Scott's prior action. See id. at 12–13.

However, the magistrate judge considered City Defendants' argument that the matter in this case could have been resolved in the prior state action to be "undeveloped" and "insufficient as briefed." Id. at 13. In particular, the magistrate judge found that "City Defendants ha[d] failed to adequately address [Scott's] argument that she could not have filed her ADA or Title VII claims during the pendency of the state-court action because she did not receive her right-to-sue letter from the EEOC until November 2021." Id. at 14 (emphasis in original). The magistrate judge explained that a plaintiff seeking to file a private lawsuit seeking relief under either Title VII or the ADA must obtain a right-to-sue letter from the EEOC and then file suit within 90 days after receiving it. Id. at 15 (citing Puckett v. Tenn. Eastman Co., 889 F.2d 1481, 1486 (6th Cir. 1989) (explaining requirement under Title VII); Mayers v. Sedgwick Claims

4

Mgmt. Servs., Inc., 101 F. App'x 591, 593 (6th Cir. 2004) (explaining requirement under ADA)). In the magistrate judge's view, Defendants "fail[ed] to reconcile the fact that here, Plaintiff's state-court action was resolved in February 2019 . . ., prior to Plaintiff filing her EEOC charge." Id. at 16.

The magistrate judge recommends dismissing DPD from this lawsuit, as the DPD is an agency of the City and so not subject to suit. See id. at 8 (citing Haverstick Enter., Inc. v. Fin. Fed. Credit, Inc., 32 F.3d 989, 992 n.1 (6th Cir. 1994) ("Under the law of Michigan, a municipal police department is a creature of the municipality. . . . A suit against a city police department in Michigan is one against the city itself, because the city is the real party in interest.")). However, because the magistrate judge considers City Defendants' arguments undeveloped as to the dismissal of the remaining City Defendants, he recommends denying the rest of City Defendants' motion to dismiss without prejudice. Id. at 19.

## II. ANALYSIS[6]

City Defendants object to the R&R, submitting that they have sufficiently briefed their res judicata argument and adequately addressed Plaintiff's argument that she could not have brought her Title VII and ADA claims without a right-to-sue letter from the EEOC. See Obj. at 4–8. For the reasons that follow, the Court agrees and sustains their objections pertaining to res judicata.[7]

---

[6] The Court reviews de novo any portion of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Alspaugh v. McConnell, 643 F.3d 162, 166 (6th Cir. 2011) ("Only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.") (punctuation modified). Absent a specific objection, the issue is waived. Willis v. Sullivan, 931 F.2d 390, 401 (6th Cir. 1991).

[7] Because the Court sustains City Defendants' objections regarding the adequacy of their briefing on res judicata, it does not reach their objection to the magistrate judge's findings on collateral estoppel. See Obj. at 9–10.

5

A grievant alleging an unlawful employment practice under Title VII may file a "charge" with the EEOC "after the alleged unlawful employment practice occurred," and he or she must do so within 180 days of that alleged occurrence. 42 U.S.C.A. § 2000e-5(e)(1). One-hundred eighty days after filing that charge, a grievant can request, and is "entitled to receive from the Attorney General forthwith, a right-to-sue letter." Heyliger v. State Univ. & Cmty. Coll. Sys. of Tenn., 126 F.3d 849, 855 (6th Cir. 1997); 42 U.S.C.A. § 2000e-5(f)(1). The same standards apply to claims under the ADA. See Mayers, 101 F. App'x at 593 (citing 42 U.S.C. § 12117(a) (adopting the "powers, remedies, and procedures set forth in" provisions including § 2000e-5(e) for claims of ADA violations)); see also Lewis v. Humboldt Acquisition Corp., 681 F.3d 312, 322 (6th Cir. 2012) (Clay, J. concurring in part and dissenting in part) (explaining that "[t]he ADA explicitly cross-references and adopts Title VII's enforcement section, including "'powers, remedies, and procedures'").

Though a litigant under Title VII or the ADA must request a right-to-sue letter, "the right-to-sue letter is a condition precedent and not a jurisdictional requirement," Rivers v. Barberton Bd. of Educ., 143 F.3d 1029, 1032 (6th Cir. 1998)—that is, a plaintiff is not jurisdictionally barred from filing her claims without a right-to-sue letter yet in hand.

In this case, Scott alleges that the last act of discrimination against her—i.e., the latest unlawful employment occurrence—was on March 3, 2018. See Suppl. Resp. at PageID.268. She could have filed a charge with the EEOC immediately thereafter. If she had filed the charge the next day, on March 4, then she would have been entitled to receive her right-to-sue letter not later than August 31, 2018. Instead, Scott chose to eschew diligent pursuit of her EEOC letter; she waited until March 15, 2019 to file her EEOC charge—more than a year after the last act of discrimination. Her delay in filing her EEOC charge until after her state case was dismissed on

February 11, 2019 meant that Scott had lost the opportunity to obtain a right-to-sue letter while her state action was pending.[8]

Scott's delay is fatal for her current case. As demonstrated by City Defendants' case law, the United States Court of Appeals for the Sixth Circuit has found that litigants in similar positions cannot rely on the delayed receipt of right-to-sue letters to escape the constraints of res judicata. In Heyliger, the plaintiff filed a complaint with the EEOC in September 1990 based on his termination, filed a state-law claim in state court in December 1990, and lost on summary judgment in November 1993. 126 F.3d at 851. The plaintiff then received a right-to-sue letter in January 1994 and filed a Title VII suit in federal court in April 1994, basing his allegations on the same termination that was at issue in the state case. Id. The Sixth Circuit affirmed the dismissal of the suit on res judicata or "claim preclusion" grounds because the plaintiff "could have folded his Title VII claim into his action in state court." Id. at 856. Though the plaintiff did not have his right-to-sue letter in hand during the case's pendency, the fault was his own; he "could have requested, and been entitled to receive," the right-to-sue letter 180 days after filing his EEOC complaint. Id. at 855. Having received the right-to-sue letter, the plaintiff could have amended his state-court complaint to "fold[] his Title VII claim into his action in state court." Id. at 856. Thus, the plaintiff's Title VII claim "reasonably could have been litigated in state court," barring the subsequent suit in federal court under Tennessee claim preclusion law. Id. (punctuation modified); see also Schulz v. Hope Network Rehab. Servs., No. 406-cv-23, 2007

---

[8] This timeline is the one most favorable to Scott. Her delay in initiating the EEOC process was actually longer. She alleges discriminatory treatment and termination in September 2017. Nothing would have stopped her from seeking an EEOC letter promptly thereafter. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act."); see also Watson v. Ohio Dep't of Rehab. & Correction, 690 F. App'x 885, 889 (6th Cir. 2017). So her delay was actually some 18 months.

WL 330201, at *3 (W.D. Mich. Jan. 31, 2007), aff'd, 256 F. App'x 774 (6th Cir. 2007) (granting summary judgment to defendant on claim preclusion grounds as to both Title VII and ADA claims and rejecting argument that plaintiff "did not receive her right to sue letter from the [EEOC] until after she had filed her complaint in the state action") (citing Heyliger, 126 F.3d at 855–856).

Similarly, in Rivers, the plaintiff filed discrimination charges with the EEOC in June 1993, commenced a federal action in February 1994, and lost on summary judgment. 143 F.3d at 1030. After the conclusion of that suit, the plaintiff requested right-to-sue letters for her discrimination claims, which she received in May and June of 1996, and then initiated a new federal action alleging a Title VII claim. Id. The court granted summary judgment on res judicata grounds, and the Sixth Circuit affirmed, finding that "the Title VII claim could, and should, have been litigated in" the prior lawsuit—even though the plaintiff had not received her right-to-sue letter. Id. at 1032. The court emphasized that, after having filed her EEOC complaint, the plaintiff "had a right under the statute to obtain her letter forthwith simply upon request." Id. at 1033 (citing 42 U.S.C.A. § 2000e-5(f)(1)). The Sixth Circuit concluded that the plaintiff "ha[d] made no showing why she could not have otherwise obtained the letter, and perfected her Title VII claim from the outset." Id. "Clearly, [the plaintiff] could, and should, have maintained the viability of her Title VII action in" the first action. Id.

Scott, too, could and should have asserted her Title VII and ADA claims in the first suit she filed. Her claimed inability to do so derives from the fact that she did not receive her right-to-sue letter until after the conclusion of that action. But she has only herself to blame for the delay. Scott could have filed her complaint with the EEOC on March 4, 2018 and then "requested, and been entitled to receive," her right-to-sue letter on August 31, 2018—leaving

8

plenty of time for her to amend her complaint and "fold[ her] Title VII claim [and ADA claim] into [her] action in state court." Heyliger, 126 F.3d at 855–856.[9] Scott has made "no showing why she could not have" done so, nor why she instead waited until March 2019 to initiate EEOC processes. Rivers, 143 F.3d at 1033.[10]

An alternative finding would allow plaintiffs two bites at the apple, letting grievants strategically delay invoking EEOC procedures while exploring litigation on other claims. The principles of res judicata and Sixth Circuit precedent counsel against such a system. "Not requiring Title VII plaintiffs to comply with [EEOC] requirements would mean . . . that 'a significant fraction of legally questionable discharges would give rise to two suits,' a result that would be 'inefficient and unduly burdensome . . . .'" Heyliger, 126 F.3d at 856 (quoting Herrmann v. Cencom Cable Assoc., Inc., 999 F.2d 223, 225 (7th Cir.1993) (characterized by Heyliger as "requiring claimant, in order to avoid claim preclusion, to seek a right-to-sue letter and join Title VII claim with another, sufficiently related, pending federal action . . .")).

Therefore, City Defendants have established the three elements for a res judicata defense under Michigan law and are entitled to dismissal. For the reasons explained by the magistrate judge, the prior action—i.e., the state court action—was decided on the merits, and both the state court action and Scott's latest action involve the same parties or their privies. See Young, 471

---

[9] As noted above, Scott could have filed her EEOC charge promptly after her termination in September 2017, meaning she would have been entitled to receive her right-to-sue letter by March 2018.

[10] Scott submits in her response to City Defendants' objections that she "rightfully filed her EEOC [charge] once she noticed that defendants had refused to act in a reasonable measure." Pl. Resp. to Obj. at 10. There is no merit to this explanation for Scott's delay. She was allegedly forced to retire in September 2017, and the last act forming the basis for her EEOC charge allegedly occurred in March 2018. Suppl. Resp. at PageID.268. Scott did not have to "notice" anything to file her EEOC charge, and she certainly did not have to wait twelve to eighteen months.

F.3d at 680.[11]

And the last requirement for res judicata is met, as "the matter in the second case . . . could have been[] resolved in the first." Id. Because the absence of a right-to-sue letter resulted from Scott's own failure to diligently pursue EEOC processes, she cannot convert her sabotage of the EEOC process into the absurd contention that her Title VII and ADA claims could not have been asserted in the state court action. Heyliger, 126 F.3d at 855–856; Rivers, 143 F.3d at 1032–1033.

Additionally, though not specifically mentioned in the R&R or argued by Defendants, securing a right-to-sue letter is "not a jurisdictional requirement" and so was not essential to Scott's ability to file a Title VII or ADA claim. Rivers, 143 F.3d 1029, 1031–1032 ("[E]very circuit presented with the issue has decided that the receipt of a right-to-sue letter prior to the filing of a Title VII action is not a jurisdictional prerequisite, but rather a precondition subject to equitable tolling and waiver.") (punctuation modified). Even without a right-to-sue letter, Scott could have filed her Title VII and ADA claims in her initial action and then relied on equitable principles to explain why she had not yet sought or received relief through EEOC procedures. Because the failure to obtain the letter was not a bar to filing her Title VII and ADA claims, it cannot be said that Scott could not have asserted them in the prior action.[12]

---

[11] The parties have not objected to the magistrate judge's findings on these elements, and so any objections are waived. See Willis, 931 F.2d at 401. Regardless, the Court finds that City Defendants have established both of these elements. This Court has already found that Scott's state court action was decided on the merits for res judicata purposes. See Scott, 2021 WL 323756, at *3–*8. And the privity requirement is satisfied because any City Defendants not named in the prior action are government officials who have "'an employer-employee relationship'" with the City, which was a defendant in the state court action. Id. at *5 (quoting McCoy v. Mich., 369 F. App'x 646, 650 (6th Cir. 2010).

[12] Scott has even less excuse for not having asserted her state-law ELCRA claim in the prior action—which has no provision for a right-to-sue letter—and she had already brought a

Therefore, the Court does not accept the magistrate judge's recommendation to deny City Defendants' motion to dismiss for failure to establish their res judicata argument, and it sustains City Defendants' objections in that regard. The Court, however, does accept the magistrate judgment's recommendation to dismiss DPD.[13]

### III. CONCLUSION

For the reasons explained above, the Court sustains in part City Defendants' objections (Dkt. 61), accepts in part the magistrate judge's recommendation (Dkt. 60) by dismissing DPD, denies the magistrate judge's recommendation to deny the rest of City Defendants' motion, and grants City Defendants' motion to dismiss (Dkt. 22).

SO ORDERED.

Dated: March 31, 2023　　　　　　　　　　　s/Mark A. Goldsmith
　　　　　Detroit, Michigan　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

PWDCRA claim in the state action, which was found unmeritorious. All of her claims either were or should have been brought in Scott's state action alleging a discriminatory termination.

[13] The parties waived any objection to this proposed finding by not specifically objecting to it. See Willis, 931 F.2d at 401. Further, the Court finds that dismissal of DPD is proper. See Haverstick, 32 F.3d at 992 n.1.